UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GENIECESA HARRIS-GILCHREASE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-357** |
| **CAPITAL ONE AUTO FINANCE** | **SECTION "B"(3)** |

## ORDER AND REASONS

Before the Court are defendant Capital One Auto Finance's motion to dismiss plaintiff's complaint (Rec. Doc. 5), plaintiff Geniecesa Harris-Gilchrease's opposition (Rec. Doc. 7), and defendant's reply (Rec. Doc. 8). For the following reasons,

**IT IS ORDERED** that defendant Capital One Auto Finance's motion to dismiss plaintiff's complaint (Rec. Doc. 5) is **GRANTED IN PART**, in accordance with this Order. Plaintiff's claims based on intentional infliction of emotional distress, violations of the Fair Debt Collection Practices Act, and detrimental reliance are hereby **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint with respect to specific facts supporting her claims of breach of contract, fraud, and violations of the Fair Credit Reporting Act **no later than September 16, 2024. Failure to timely amend the complaint will lead to the dismissal of the action without future notice.**

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Contending her vehicle's lienholder ignored a contract modification and began repossession procedures, plaintiff Geniecesa Harris-Gilchrease expressly brings her pro se complaint against defendant Capital One Auto Finance ("COAF") for breach of contract, fraud, intentional infliction of emotional distress, violations of the Fair Debt Collection Practices Act ("FDCPA"), and violations of the Fair Credit Reporting Act ("FCRA"). Plaintiff owed a monthly car note payment of $650.59, based on a written contract confected in June of 2020. Rec. Doc. 1

1

at 4; *see also* Rec. Doc. 5-2 at 2 (contract). Plaintiff avers parties agreed on November 1, 2023 to modify the contract "to include new installment payments for the months of November and December of 2023 and January of 2024." Rec. Doc. 1 at 4. As plaintiff explains the payment schedule, "This was put in place until the plaintiff's account was made current, and then the original contract terms would resume." *Id*.

However, plaintiff alleges defendant ignored the agreement. Plaintiff states defendant "knowingly and fraudulently had the plaintiff set up installment payments to bring her 'account current', knowing the plaintiff account will remain delinquent to access late fees, file repossession and report the plaintiff account 30 days late to the credit bureaus." *Id.*

Defendant now moves to dismiss plaintiff's complaint. Rec. Doc. 5. Plaintiff opposes, with a pro se response. Rec. Doc. 7.

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (discussing Fed. R. Civ. P. 8(a)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

When deciding whether a plaintiff has met its burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted). Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A complaint does not meet the plausibility standard "if it offers only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted) (citing *Twombly*, 556 U.S. at 555).

Although motions to dismiss are evaluated by the content in the complaint, the United States Supreme Court has described the extent of possible evidence: "[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 551 U.S. 308, 322 (2007) (citation omitted). Further, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quotation omitted); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

Here, plaintiff references in her complaint car lease contract and correspondence with defendant. *See* Rec. Doc. 1 at 4. Both types of documents are central to plaintiff's complaint, and

3

are attached to defendant's motion to dismiss and plaintiff's opposition. *See* Rec. Docs. 5-2, 5-3, and 7-1. Thus, all are appropriately considered in these Rule 12(b)(6) motions.

### B. Louisiana Substantive Law

Although pursuing claims rooted in both state and federal law, plaintiff's complaint is centrally a breach of contract suit between parties with diverse citizenship. *See* Rec. Doc. 1 at 1 ("Complaint for a Civil Case Alleging Breach of Contract"). "A federal court sitting in diversity applies the substantive law of the forum state, in this case Louisiana." *Wisznia Co. v. Gen. Star Indem. Co.*, 759 F.3d 446, 448 (5th Cir. 2014). Thus, as to claims not implicating federal statutes, Louisiana substantive law applies.

### C. Standard for Pro Se Pleadings

It is long "axiomatic that courts are required to liberally construe pro se complaints." *Jackson v. Reese*, 608 F.2d 159, 160 (5th Cir. 1979); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation omitted) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). Such a construction looks to "the substance of the relief sought by a *pro se* pleading, not the label that the petitioner has attached to it." *Hernandez v. Thaler*, 630 F.3d 420, 426–27 (5th Cir. 2011). Accordingly, pro se filings are not evaluated for technical precision but are "so construed as to do substantial justice." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting Fed. R. Civ. P. 8(f)); *see also Arredondo v. Univ. of Texas Med. Branch at Galveston*, 950 F.3d 294, 298 (5th Cir. 2020) ("[W]e can consider a pro se litigant's non-compliant brief when the non-compliance did not prejudice the opposing party."). This measure has led courts to speculate on the true issues the pro se litigant is asserting. *See Grant v. Cuellar*, 59 F.3d 523, 525 (5th Cir. 1995) (finding the district court's speculative review to be overly narrow).

However, the pro se filer cannot rely on conclusory allegations nor avoid procedural requirements. *See Abram v. McConnell*, 3 F.4th 783, 787 (5th Cir. 2021); *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988); *Johnson v. Gonzalez*, 172 F.3d 869 (5th Cir. 1999). Where a defendant seeks dismissal of a complaint, "regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (citation omitted).

Here, we liberally evaluate plaintiff's complaint to find clear allegations of breach of contract, fraud, intentional infliction of emotional distress, violations of the FDCPA, and violations of the FCRA. Additionally, in her opposition to the instant motion, plaintiff also explicitly states a request for "relief under promissory estoppel." Rec. Doc. 7 at 5. Under Louisiana law, promissory estoppel is known as detrimental reliance. *See Barnett v. Saizon*, 2008-336 (La. App. 1 Cir. 9/23/08), 994 So. 2d 668, 674. As the Louisiana First Circuit Court of Appeal explained, "The theory of detrimental reliance, also referred to as promissory or equitable estoppel, is based upon La. C.C. art. 1967, which provides, in pertinent part, that '[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying.'" *Id.* (quoting La. Civ. Code art. 1967). Thus, Louisiana courts have delineated the elements for the action as "(1) representation by conduct or word, (2) justifiable reliance in representation, and (3) change in position to detriment because of reliance." *Babkow v. Morris Bart, P.L.C.*, 98-0256 (La. Ct. App. 4th Cir. 12/16/98), 726 So. 2d 423, 427 (citations omitted). Based on our liberal review of plaintiff's complaint, we find her to assert a claim for equitable estoppel or detrimental reliance, no matter the failure to properly label such a claim.

### D. Breach of Contract

Under Louisiana law, a contract is "the law between the parties." *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 420 (La. 1988). Thus, interpretation of a contract is the quest to determine "the common intent of the parties." La. Civ. Code art. 2045. A provision within a contract is not interpreted in isolation but "in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. However, "when a contract is ambiguous, the trier of fact must resolve the factual issue of intent." *Keiland Constr., L.L.C. v. Weeks Marine, Inc.*, 109 F.4th 406, 416 (5th Cir. 2024) (quotation cleaned up, citation omitted). As such, where a court must resolve contractual ambiguity, "judgment on the pleadings or summary judgment is improper." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. 2007) (citation omitted). Nonetheless, where the contract provides only one reasonable interpretation based on "the general, ordinary, plain and popular meaning of the words used", the contract is unambiguous and is applied as a matter of law. *Prejean v. Guillory*, 2010-0740 (La. 7/2/10), 38 So. 3d 274, 279.

Parties fundamentally disagree over the resolution provided through their November 1, 2023 phone conversation. Plaintiff contends the four agreed-upon payments are a product of a contract modification—apparently from that date until January 26, 2024. Defendant disputes that any contract modification occurred. In fact, defendant insists the telephone conversation could not alter the contract: "[S]uch modification would be barred by the Contract which provides that any 'change to this Contract must be in writing' and that no 'oral modifications to this Contract are binding.'" Rec. Doc. 5-1 at 10 (quoting Rec. Doc. 5-2 at 6).

6

Defendant, however, overstates its argument by understating the contractual language. In its quotation of the final page of the contract, defendant splices together two phrases, while omitting a key sentence and a pertinent descriptive:

> This Contract contains the entire agreement between you and us relating to this Contract. **We may agree to extend or defer payment and provide you written confirmation. Any other change** to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

Rec. Doc. 5-2 at 6 (emphasis added). By the very language of the contract, certain oral modifications later confirmed in writing are anticipated.

Such modifications, moreover, occurred between these parties. Within the attachments to defendant's instant motion, two correspondences indicate an oral agreement to defer monthly payments to months following the original contract term. *See* Rec. Doc. 5-3 at 8 (Aug. 3, 2023) and 10 (April 5, 2023). These "extension confirmations" state the monthly payments were "skipp[ed]". *Id*. In an earlier section of the contract, defendant did not negate the possibility of such modifications; rather, it warned that its allowance of skipped payments did not thereby establish a pattern beyond the given modification:

> We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make later or partial payments.

Rec. Doc. 5-2 at 5. Defendant's argument based on a mandatory writing is unfounded.

Another aspect of the contract, however, appears to foreclose plaintiff's breach of contract claim. Although permitting oral modifications to extend or defer payments, the contract states defendant will provide plaintiff "written confirmation" of any modification. *Id.* at 6. The "extension confirmations" attached to defendant's motion are examples of the contractually agreed-upon written confirmation. *See* Rec. Doc. 5-3 at 8 and 10. On the other hand, the four

7

correspondences that followed parties' November 1, 2023 call do not evidence a contract modification. Instead of "extension confirmations," these are titled "payment confirmations." *See id.* at 4, 5, 6, and 7. Plaintiff admits she understood the payment plan was different from her previous deferral of payments: "Plaintiff was informed that that she didn't qualify to have the October payment placed at the end of her loan . . . . COAF stated that the Plaintiff did qualify for a payment plan to spread the past due balance of $650.59 over several months." Rec. Doc. 7 at 3. Moreover, the contract permitted payments that fell outside the monthly schedule, but still required monthly payments to be maintained. Rec. Doc. 5-2 at 5 ("If you make a partial prepayment you must still continue to make your regular monthly payment as scheduled in this Contract.").

If there was any doubt on the continued requirement to maintain the regular monthly payments, the confirmation correspondences clarified matters:

> Please remember, making your monthly payments in full and on time is important to avoid delinquency. If you are past due on your account, you may be assessed late fees and/or reported to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

5-3 at 4. In sum, the contract states any oral agreements to defer payments would be confirmed in writing, and the writings associated with parties' November 1, 2023 conversation only confirm future payments, not contract modification. No matter plaintiff's expressed confusion over whether the payment plan "kept" or "brought" her account current, the unambiguous language of the contract and correspondence reveal no breach of contract from the current pleadings.

In its current form, plaintiff's complaint fails to provide a basis for her breach of contract claim. Nonetheless, recognizing that pursuant to Federal Rule of Civil Procedure 15(a)(2) we "should freely give leave when justice so requires," plaintiff is permitted to amend her complaint with respect to her breach of contract claim. More specifically, in application of the supplied contractual terms, plaintiff must produce a written confirmation of an orally agreed-to contract

8

modification. No attached exhibit currently supplies such confirmation; thus, no attached exhibit is sufficient for this purpose. Without such a written correspondence, this claim will be dismissed.

### E. Fraud

Under Louisiana law, "[f]raud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. Civ. Code art. 1953. "Fraud may also result from silence or inaction." *Id.* Federal Rule of Civil Procedure 9(b) requires that all claims of fraud be pled with particularity, specifically "the time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009) (quotation cleaned up, citation omitted). The elements of a Louisiana fraud claim are: "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to the circumstance substantially influencing the victim's consent to (a cause of) the contract." *Jones v. Wells Fargo Bank, N.A.*, 626 F. App'x 500, 505 (5th Cir. 2015) (quoting *Shelton v. Standard/700 Assocs.*, 798 So. 2d 60, 64 (La. 2001)). Fraud is not actionable where "the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill." La. Civ. Code art. 1954.

Plaintiff contends defendant fraudulently misrepresented the purpose of the payment plan "through omission." Rec. Doc. 7 at 5. For claims of fraud by silence or omission, there first must be a duty to speak. *Greene v. Gulf Coast Bank*, 593 So. 2d 630 (La. 1992). There is no general duty to speak under Louisiana law, but such a duty may exist in a fiduciary relationship. *Id.* at 632 (citation omitted). A fiduciary relationship is one where "confidence is reposed on one side and

9

there is resulting superiority and influence on the other." *Plaquemines Parish Comm'n Council v. Delta Development Co., Inc.*, 502 So. 2d 1034, 1040 (La. 1987). "The defining characteristic of a fiduciary relationship, therefore, is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Scheffler v. Adams & Reese, LLP*, 2006-1774 (La. 2/22/07), 950 So. 2d 641, 648. Due to this trust, the fiduciary "cannot further his own interests and enjoy the fruits of an advantage taken of such a relationship." *Plaquemines Parish Comm'n Council*, 502 So. 2d at 1040.

A lender is not normally considered a fiduciary. *See Greene*, 593 So. 2d at 632–33. Special circumstances between borrower and lender must exist to give rise to such a duty. *See, e.g., Trans-Global Alloy Ltd. v. First Nat'l Bank of Jefferson Parish*, 583 So. 2d 443, 452–53 (La. 1991) (bank as pledgee for letter of credit); *Ames v. Ohle*, 2016-0612 (La. App. 4 Cir. 4/26/17), 219 So. 3d 396, 408 (investment advice by employee in personal capacity did not establish trust relationship with bank); *Taylor v. Deutsche Bank Nat'l Tr. Co.*, No. 18-14239, 2019 WL 2060136, at *3 (E.D. La. May 9, 2019) (no fiduciary duty where no factual assertions showed bank-mortgagee had a fiduciary relationship and where alleged omission was "easily discovered, through the exercise of reasonable diligence, publicly available information"). Moreover, Louisiana statute requires a writing between the parties to establish a financial institution's fiduciary status:

> No financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary.

La. Rev. Stat. § 6:1124. Even if plaintiff could supplement her complaint with facts sufficient to plead a fiduciary relationship with particularity, she would first necessarily need to show a writing by which defendant agreed to act as a fiduciary.

And the foregoing is just the consideration of Louisiana's first element. Taking plaintiff's allegations in a light most favorable to her, the unjust advantage accrued remains speculative at best. Plaintiff agreed to make payments on her car note. The accompanying "payment confirmations" detailed those payments went toward her contractual obligation—while her monthly obligation remained. "Fraud cannot be predicated upon mistake or negligence, no matter how gross." *Terrebonne Concrete, LLC v. CEC Enterprises, LLC*, 2011-0072 (La. App. 1 Cir. 8/17/11), 76 So. 3d 502, 509. Plaintiff fails, as currently pled, to make a showing of the advantage defendant obtained by the continuation of contractually agreed-upon terms.

Thus, in its current form, plaintiff's complaint fails to provide sufficient factual allegations to plead fraud with particularity. Nonetheless, in compliance with Federal Rule of Civil Procedure 15(a)(2), plaintiff is permitted to amend her complaint with respect to specific facts supporting the claim. More specifically, without written agreement of defendant's adoption of a fiduciary duty or articulated support of other fraud elements, this claim will be dismissed.

### F. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant intended to inflict severe emotional distress or knew that such distress would be certain or substantially certain to result from his conduct. *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 21 (5th Cir. 2020); *Martin v. Am. Midstream Partners, LP*, 386 F. Supp. 3d 733, 741 (E.D. La. 2019); *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). To satisfy the first element, the defendant's conduct must "go beyond all possible bounds of decency, and . . . be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So. 2d at 1209. Such conduct "does not extend to mere insults, indignities, threats, annoyances,

petty oppressions, or other trivialities." *Id.* Even at the motion to dismiss stage, Louisiana courts have noted the "high threshold for evidence of intentional infliction of emotional distress." *Singleton v. St. Charles Par.*, 02-590 (La. App. 5 Cir. 11/26/02), 833 So. 2d 486, 495 (citing *Nicholas v. Allstate Ins. Co.*, 99–2522, p. 1 (La. 8/31/00), 765 So. 2d 1017, 1019)) (affirming the dismissal of a suit where "the conduct of which plaintiff complains did not fit within the parameters set out in *White v. Monsanto, supra,* and its progeny").

Plaintiff provides nothing remotely near the factual allegations necessary to sustain an intentional infliction of emotional distress action. Plaintiff seeks "$1 million dollars in tort damages for IIED due to Capital One Auto Finance attempting to repossess the plaintiff vehicle by sending a notice of repossession to her home after the plaintiff had already set up installment plans to cover the 'delinquent' amount the defendant claimed the plaintiff owed." Rec. Doc. 1 at 4. The complained-of notice stated plaintiff had missed October and November payments and provided a payment amount to cure delinquency and prevent vehicle repossession. Rec. Doc. 5-3 at 2. The amount was less than the total of the payment for two months. *Id*.

Even assuming, *arguendo*, defendant's intent to inflict severe emotional distress through a standard financial notice, "the conduct of which plaintiff complains [does] not fit within the parameters set out" in Louisiana law. *Singleton*, 833 So. 2d at 495. Put simply, plaintiff fails to state claim for intentional infliction of emotional distress, and we can perceive of no viable claim she could include in an amended petition with regard to these underlying allegations. *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

### G. Fair Debt Collection Practices Act

For an actionable claim under the FDCPA, a plaintiff must state that "(1) she has been the object of collection activity arising from consumer debt, (2) the defendant is a 'debt collector' as

12

defined by the Act, and (3) the defendant has engaged in an act or omission prohibited by the Act." *Saragusa v. Countrywide*, No. 14-2717, 2016 WL 1059004, at *5 (E.D. La. Mar. 17, 2016) (Vance, J.), *aff'd sub nom. Saragusa v. Countrywide Home Loans, Inc.*, 707 F. App'x 797 (5th Cir. 2017). Debt collectors include "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Thus, creditors are expressly excluded from the debt collector definition. *See Saragusa*, 2016 WL 1059004, at *5; *Aguiluz v. Citibank, N.A.*, No. 18-5126, 2018 WL 5773302, at *5 (E.D. La. Nov. 2, 2018) (Lemmon, J.); *Thomasson v. Bank One, Louisiana, N.A.*, 137 F. Supp. 2d 721, 723–24 (E.D. La. 2001) (Fallon, J.).

In the contract, defendant is identified as the "lienholder/loss-payee." Rec. Doc. 5-2 at 6. Thus, as plaintiff's creditor, defendant sought to collect on a debt owed to itself. *See* Rec. Doc. 5-3 at 2. Although in its correspondence defendant identifies itself as a "debt collector," *see id.* at 3, defendant does not so qualify under the FDCPA. Accordingly, plaintiff fails to state a claim pursuant to the FDCPA, making dismissal proper. *See Saragusa*, 2016 WL 1059004, at *5; *Aguiluz*, 2018 WL 5773302, at *5; *Thomasson*, 137 F. Supp. 2d 721, 724.

### H. Fair Credit Reporting Act

The FCRA imposes duties on consumer reporting agencies, users of consumer reports, and furnishers of information to consumer reporting agencies. *See* 15 U.S.C. § 1681 *et seq.* Although the FCRA does not precisely define "furnishers of information," "courts in the Fifth Circuit have defined the term broadly to mean an entity that transmits information concerning a particular debt owed by a particular consumer to a credit reporting agency." *Beard v. Experian Info. Sols., Inc.*, No. 23-1306, 2023 WL 8827762, at *4 (E.D. La. Dec. 21, 2023) (Milazzo, J.) (quotation cleaned

13

up) (collecting cases). Defendant does not dispute being a furnisher of information. *See* Rec. Doc. 5-1 at 12–13, 15.

Under the FCRA, a plaintiff may bring a private action against a furnisher of information where (1) the plaintiff disputed information on a report with a credit reporting agency, (2) the credit reporting agency notified the furnisher of information of the dispute, and (3) the furnisher of information failed to conduct an investigation, correct inaccurate information, or notify the credit reporting agency of the results of the investigation. *See Hall v. LVNV Funding, L.L.C.*, 738 F. App'x 335, 335–36 (5th Cir. 2018) (quoting 15 U.S.C. § 1681s-2(b)(1)(A)–(E)). Defendant contends plaintiff fails to state an actionable FCRA claim because, *inter alia*, plaintiff does not allege she disputed the accuracy of the report with any credit reporting agency. Rec. Doc. 5-1 at 15. In its response to plaintiff's payment plan dispute, defendant "respectfully decline[d plaintiff's] request to change the accurate information we are reporting for this account." Rec. Doc. 7-1 at 2. In the same correspondence, defendant provides contact information for credit reporting agencies Experian, Equifax, and TransUnion Corp. *Id*. ("[W]e recommend you contact the individual [National Consumer Reporting Agencies] directly."). Plaintiff does not allege that, before filing suit, she disputed the records with a credit reporting agency. *See* Rec. Doc. 1 at 4; Rec. Doc. 7 at 4. Plaintiff makes no claim, in turn, that a credit reporting agency notified defendant of her dispute over information. *See id*.

In its current form, plaintiff's complaint fails to provide sufficient factual allegations to plead a claim under the FCRA. Nonetheless, in compliance with Federal Rule of Civil Procedure 15(a)(2), plaintiff is permitted to amend her complaint with respect to specific facts of her dispute with a credit reporting agency and the agency's notification of defendant of the dispute—both before the filing of this action. Without such factual supports, this claim will be dismissed.

### I. Detrimental Reliance

As plaintiff's final discernable claim, we find plaintiff asserts an action for detrimental reliance. As previously described, for a plaintiff to state a claim for detrimental reliance, she must show "(1) representation by conduct or word, (2) justifiable reliance on representation, and (3) change in position to detriment because of reliance." *Babkow v. Morris Bart, P.L.C.*, 98-0256 (La. Ct. App. 4th Cir. 12/16/98), 726 So. 2d 423, 427 (citations omitted). Plaintiff argues relief is available through this theory because she relied on defendant's promise and her reliance was reasonable: "It is reasonable to believe that the Plaintiff relied on the Defendant's promise to bring her account current if she made all the payments on time as agreed in the payment plan set forth by COAF. COAF then sent the Plaintiff an ambiguous payment confirmation that stated, 'If you are past due on your account, you may be assessed late fees and/or reported to the credit bureaus'." Rec. Doc. 7 at 5. Defendant denies a promise was ever made that the payment plan would keep plaintiff's account current, citing the language in the payment confirmations as support. Rec. Doc. 8 at 7–8. Defendant also argues any reliance on a promise would not be reasonable in light of the language in the correspondences. *Id.* at 8.

"A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. Civ. Code art. 1967. Accordingly, an affirmative promise is necessary to state a claim for detrimental reliance; mere reliance upon "acts and/or omissions" is insufficient. *McLin v. Hi Ho, Inc.*, 2012-1702 (La. App. 1 Cir. 6/7/13), 118 So. 3d 462, 470; *see also Wooley v. Lucksinger*, 2006-1167 (La. App. 1 Cir. 5/4/07), 961 So. 2d 1228, 1239 (emphasis in original) ("A promise is a *declaration* which binds the person who makes it, either in conscience

or law, to do a specific thing, which then gives to the other person a right to expect or claim the performance of that thing.").

Although plaintiff shows confusion over whether the plan would "keep" or "bring" her account current, in her most recent and expansive filing she clarifies that defendant fraudulently misrepresented the purpose of the payment plan by omitting details of the continued applicability of contract provisions: "[T]his is misrepresentation through omission." Rec. Doc. 7 at 5. On this assertion alone, plaintiff's detrimental reliance claim fails as a matter of law.

Further, even if such a promise were made, reliance on it would not be reasonable. The United States Fifth Circuit Court of Appeals has affirmed dismissal of a detrimental reliance claim where the purported promise fell "outside the scope of the fully-integrated, written agreements". *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1330 (5th Cir. 1994). Here, parties agreed any oral agreements delaying payments would be reduced to writing in a confirmation. Rec. Doc. 5-2 at 6 ("This Contract contains the entire agreement between you and us relating to this Contract. We may agree to extend or defer payment and provide you written confirmation."). Two such modification confirmations are attached to the instant motion. *See* Rec. Doc. 5-3 at 8 and 10. The correspondences that followed the November 1, 2023 call, instead, were titled "payment confirmations." *See id.* at 4, 5, 6, and 7. These confirmations reaffirmed the applicability of the contractual agreement as to plaintiff's monthly payments:

> Please remember, making your monthly payments in full and on time is important to avoid delinquency. If you are past due on your account, you may be assessed late fees and/or reported to the credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

*Id*. Accordingly, in conformity with Fifth Circuit caselaw, reliance at odds with the written contractual agreement and the payment confirmations is unreasonable. *See Omnitech Int'l, Inc.*, 11 F.3d at 1330; *see also New St. Joseph Missionary Baptist Church v. Scottsdale Ins. Co.*, No.

24-583, 2024 WL 3427215, at *4 (E.D. La. July 16, 2024) (Africk, J.) ("The complaint suggests only that defendants made representations that the insurance policy would allow plaintiffs to recover damages related to the property . . . . [Plaintiffs] do not plead facts sufficient to plausibly suggest that such reliance was justified."). Thus, plaintiff fails to state a detrimental reliance claim, making dismissal proper.

    New Orleans, Louisiana this 26th day of August, 2024

                                              SENIOR UNITED STATES DISTRICT JUDGE